FILED

**NOT FOR PUBLICATION**

NOV 21 2013

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DC COMICS,<br><br>               Plaintiff - Appellee,<br><br>   v.<br><br>PACIFIC PICTURES CORPORATION;<br>IP WORLDWIDE, LLC; IPW, LLC;<br>MARC TOBEROFF; MARK WARREN<br>PEARY, as personal representative of the<br>Estate of Joseph Shuster; LAURA<br>SIEGEL LARSON, individually and as<br>personal representative of the Estate of<br>Joanne Siegel; JEAN ADELE PEAVY,<br><br>            Defendants - Appellants. | No. 12-57245<br><br>D.C. No. 2:10-cv-03633-ODW-RZ<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright, District Judge, Presiding

Argued and Submitted May 23, 2013
Pasadena, California

---

       *     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: REINHARDT and THOMAS, Circuit Judges, and SEDWICK, District Judge.[**]

In this appeal, we address another chapter in the long-running saga regarding the ownership of copyrights in Superman—a story almost as old as the Man of Steel himself.[1]  In 2003, Defendant Mark Peary, acting as executor of the estate of Joseph Shuster (one of the two co-creators of Superman), filed a copyright termination notice pursuant to 17 U.S.C. § 304(d), seeking to reclaim the copyrights to Superman that Shuster had assigned to Plaintiff DC Comics ("DC") in 1938.  DC brought this action in response, seeking, in the claim that we review here, a declaratory judgment that the notice of termination filed by the estate is invalid.  DC contends that, in an agreement (the "1992 Agreement") it signed with Joseph Shuster's siblings (including his sister and sole heir, Jean Peavy), the siblings received pensions for life in exchange for a revocation of the 1938 assignment of copyrights to DC and a re-grant to DC of all of Shuster's copyrights in Superman.  Because the 1976 and 1998 statutes permitting the filing of copyright termination notices permit only the termination of assignments

---

[**]    The Honorable John W. Sedwick, U.S. District Judge for the District of Alaska, sitting by designation.

[1]For recently-published histories, see Brad Ricca, *Super Boys: The Amazing Adventures of Jerry Siegel and Joe Shuster—the Creators of Superman* (2013) and Larry Tye, *Superman: The High-Flying History of America's Most Enduring Hero* (2012).

2

"executed before January 1, 1978," 17 U.S.C. § 304(c), (d), DC contends that the 1992 Agreement forecloses the estate's 2003 notice of termination, in that it leaves no pre-1978 assignment to terminate (instead creating a new assignment effective 1992). The district judge agreed with DC, granting it partial summary judgment on its claim for declaratory relief, as well as on another of its claims pled in the alternative. The district judge entered final judgment in favor of DC on these claims pursuant to Fed. R. Civ. P. 54(b), and we have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district judge's grant of summary judgment *de novo*, and we affirm.

1. The district judge correctly held that the 1992 Agreement, as a matter of New York law,[2] superseded the 1938 assignment of copyrights to DC, and therefore operated to revoke that assignment and re-grant the Superman copyrights to DC. The estate's primary argument to the contrary is that the 1992 Agreement

_____

[2]The parties concede that New York contract law generally governs the interpretation of the contract. We reject the defendants' arguments that federal law imposes certain additional requirements on a revocation and re-grant, such as that it must be in express terms. *See Classic Media Inc. v. Mewborn*, 532 F.3d 978, 989 (9th Cir. 2008) (suggesting that an agreement could "expressly or impliedly transfer" a termination right); *see also Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1046 (9th Cir. 2005) (quoting legislative history stating that "nothing in this section or legislation is intended to change the existing state of the law of contracts concerning the circumstances in which an author may terminate a license, transfer or assignment").

does not, in express terms, cancel the 1938 agreement. As New York courts have held, however, "[t]here is no magic to the words 'settlement' or 'compromise'" in deciding whether one agreement supersedes another; "[t]he question is always whether the subsequent agreement . . . is, as a matter of intention, expressed or implied, a superseder of, or substitution for, the old agreement or dispute." *Goldbard v. Empire State Mut. Ins. Co.*, 171 N.Y.S.2d 193, 198-99 (N.Y. App. Div. 1958); *see also Goldome Corp. v. Wittig*, 634 N.Y.S.2d 308, 309 (N.Y. App. Div. 1995) (holding that a mutual release of all causes of action was "clear and unambiguous language" superseding all prior agreements). We agree with the district judge that, under the plain text of the 1992 Agreement, which "fully settles all claims" regarding "any copyrights, trademarks, or other property right in any and all work created in whole or in part by . . . Joseph Shuster," and further "now grant[s] to [DC] any such rights," it superseded the 1938 assignment as a matter of New York law. We therefore hold that the agreement created a new, 1992

4

assignment of works to DC—an assignment unaffected by the 2003 notice of termination.[3]

    **2.**    We reject the defendants' contention that the 1992 Agreement cannot foreclose the 2003 notice of termination because it is an "agreement to the contrary" within the meaning of 17 U.S.C. § 304(c)(5). Defendants' argument runs counter to the plain text of the copyright termination statute, in that it would permit the copyright termination provision to extinguish a post-1977 copyright assignment, despite the statute's express limitation to assignments "executed

---

[3]Because we agree with the district judge that this conclusion is evident from the text of the agreement, we find no error in his refusal to consider the extrinsic evidence offered by defendants (which is, in any event, insufficient to overcome the strong inference from the text itself). *See W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 162-63 (N.Y. 1990) (under New York law, the parties' intent may be divined as a matter of law from the four corners of the contract, without looking to extrinsic evidence); *see also Rentways, Inc. v. O'Neill Milk & Cream Co.*, 126 N.E.2d 271, 273 (N.Y. 1955). We also deny defendants' motion for judicial notice of certain documents, because defendants offer no reason why they could not have provided this evidence to the district judge. *See Moore v. Czerniak*, 574 F.3d 1092, 1116 (9th Cir. 2009), *rev'd on other grounds*, 131 S. Ct. 733 (2011).

    The heirs argued explicitly below, as a ground for rejecting DC's claim for summary judgment, that the 1992 Agreement could not now bind the estate because "the Shuster Executor was not a party to the 1992 Agreement"—an issue of state law that they appeared to have tried to revive at oral argument. The district judge's ruling implicitly rejected this argument, holding that the estate was bound by the 1992 Agreement. The factual and legal dispute regarding whether Joseph Shuster's sister acted as his executor when she signed the 1992 Agreement is a potentially complex one; we do not address this question of state law, because the heirs failed to raise it in their opening brief. *See Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 994-95 (9th Cir. 2009); Fed. R. App. P. 28(a)(9)(A).

before January 1, 1978." 17 U.S.C. § 304(d); *see Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1048 (9th Cir. 2005) ("[t]he CTEA's termination provision does not apply to post-1978 agreements"). In *Milne*, we noted that the interpretation of the statute defendants favor would conflict with extensive legislative history endorsing the continued ability of authors (or their heirs) to extinguish a prior grant and replace it with a new one:

> Congress specifically stated that it did not intend for the [copyright termination] statute to "prevent the parties to a transfer or license from voluntarily agreeing at any time to terminate an existing grant and negotiating a new one[.]" H.R. Rep. No. 94-1476, at 127 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5743. Congress further stated that "nothing in this section or legislation is intended to change the existing state of the law of contracts concerning the circumstances in which an author may terminate a license, transfer or assignment." H.R. Rep. No. 94-1476, at 142, 1976 U.S.C.C.A.N. at 5758. Congress therefore anticipated that parties may contract, as an alternative to statutory termination, to revoke a prior grant by replacing it with a new one. Indeed, Congress explicitly endorsed the continued right of "parties to a transfer or license" to "voluntarily agree[ ] at any time to terminate an existing grant and negotiat[e] a new one." H.R. Rep. No. 94-1476, at 127, 1976 U.S.C.C.A.N. at 5743.

*Milne*, 430 F.3d at 1045-46 (all edits but first in original). Both our holding in *Milne* and this legislative history answer the heirs' contentions that the estate could not have entered into a revocation and re-grant prior to the passage of the 1998 Copyright Term Extension Act and its creation of the termination right in 17 U.S.C. § 304(d) and addition of an executor to the list of statutory owners of a

6

termination interest, 17 U.S.C. § 304(c)(2)(D).[4]  Our later decision in *Classic Media Inc. v. Mewborn*, which defendants argue should govern rather than *Milne*, is inapposite, in that it involved an agreement that did not extinguish the pre-1978 assignment that was the subject of the notice of termination.  532 F.3d 978, 989 (9th Cir. 2008).  Defendants' other arguments effectively ask us to overturn our decision in *Milne*—something this panel is not generally empowered to do.  *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

    **3.**    Defendants also appeal the district judge's grant of summary judgment on DC's third claim, regarding the invalidity of certain agreements signed by the heirs—including one between the heirs and a corporation headed by their attorney, Marc Toberoff, in which they formed a joint venture to exploit any recovered Superman works.  The heirs concede that their alienation of their putative future interests in the Superman copyright was contrary to the copyright

---

    [4]Since our decision in *Milne*, at least one other circuit has adopted a similar rule.  The Second Circuit has held that, "provided that a post-1978 agreement effectively terminates a pre-1978 grant, Congress did not manifest any intent for the earlier agreement to survive simply for purposes of exercising a termination right in the future."  *See Penguin Group (USA) Inc. v. Steinbeck*, 537 F.3d 193, 203 (2d Cir. 2008); *see also id.* at 202-03 ("We do not read the phrase 'agreement to the contrary so broadly that it would include any agreement that has the effect of eliminating a termination right . . . .  We cannot see how the 1994 Agreement could be an 'agreement' to the contrary solely because it had the effect of eliminating termination rights that did not yet exist.").

statute. *See* 17 U.S.C. § 304(c)(6)(D). We note that their failure (and that of Toberoff, their attorney and business partner) to disclose this information in the 2003 notice of termination itself appears to violate the relevant regulations governing notices of termination. *See* 37 CFR § 201.10(b)(1)(vii). Because, however, this claim was pled in the alternative, and because we affirm the district judge's grant of summary judgment on DC's other claim (for declaratory judgment), we dismiss as moot this aspect of the appeal.

**AFFIRMED.**